Scott, C. J.
The statute in force at the time of the tax sale, under which the plaintiff claims title, contained the following provision, in relation to auditor’s deeds, to wit:
“ All deeds of lands sold for taxes, shall convey to the purchaser all the right, title, and interest of the former proprietor, in and to the land so sold, and shall be received in all courts as good and *33 sufficient evidence of title in such purchaser.” 2 Chase’s Stat. 1107, sec. 40; Id. 1187, sec. 9.
And the question has been very fully and ably discussed by counsel, whether, under this provision, the auditor’s deed was properly received by the court below as prima fade■ evidence of title in the plaintiff, without proof of the regularity of the preliminary proceedings. We do not find it necessary to decide that question.' Eor the purposes of this case, we may assume that the deed was properly received as prima fade evidence of title, and that the burden rested with the defendant of showing such want of conformity with the law in the preliminary proceedings as would render it invalid.
The effect of the deed as prima fade evidence, rests on the presumption not only of the regularity of the proceedings necessary to authorize it, but also of the existence of such ^records and doeuments as the law requires in proof of such regularity. This presumption may, therefore, be rebutted by showing the entire absence of such records and documents, or their want of conformity to the requirements of the law. The question then arises, whether the evidence offered by the defendant was sufficient for this purpose.
Among other alleged irregularities, the defendant claims that the “delinquent list” made from the collector’s duplicate for the year 1822, embracing the lands in question, is fatally defective for want of the verification required by law.
The statute then in force, governing this subject, was the act of February 8,1820, “ levying a tax on land ” (2 Chase, 1101), which provides, in the 30th section, that “ the county auditor shall make out from the collector’s duplicate, a list of all lands on which the taxes have not been paid to said collector, which list shall be attested by such collector under oath.”
The “ list,” which in this case was offered in evidence by the defendant, purports to be verified only by the official certificate of the collector, and was therefore clearly defective, unless we are to presume that it was also verified by the oath of the collector.
The statutory requirement that the list should be “ attested under oath ” by the collector, must be understood, we think, as importing that the collector should, by written statements made under oath, and appended to the list, or indorsed upon it, bear witness to the truth of its contents. Where the law requires the execution of writings to be attested by witnesses, this imports that they shall subscribe their names thereto, as such witnesses. And it was, doubt *34 less, the intention of the law, that an inspection of the list should furnish the means of determining whether its requirements had been complied with or not.
The case of Harmon v. Stockwell, 9 Ohio, 93, turned upon the same provision of the statute, the question there being, as here, whether a delinquent list for 1822, had been properly verified by the collector. The list in that case purported to be verified under oath administered by the county auditor. . The court found that the auditor had no authority to administer the oath, and the tax title was therefore held invalid.
*A similar question arose in Lessee of Winder v. Starling, 7 Ohio, 539, as to the verification of delinquent lists, in 1826 and 1827. The case was governed by the act of February 3, 1825 (2 Chase, 1476), which prescribed forms for the various officers employed in the assessment and collection of taxes, and, among the rest, the form of a verification of the delinquent list by the collector. This form had been strictly followed in that case, and consisted of a statement which, in terms, purported to be made by the collector under oath. That the collector was in fact sworn to the truth of the statement, did not otherwise appear, but the court held that this would be presumed under the circumstances, and sustained the verification. But the presumption in that case arose from the evidence furnished by the document itself.
The decision in that case was approved and followed in Ward v. Barrows, 2 Ohio St. 241; but both these cases are placed on the ground that the verification was in accordance with the forms prescribed by law, and purported to be made under oath. Both the cases recognize the rule that the record, aided by the legal presumptions which it raises, must show the regularity of the proceedings.
But in the case before us the only verification shown by the record is in accordance with no prescribed form, and does not purport to have been made under oath. It is in the form of a mere certificate, from which a strong presumption arises that it was not intended to be, nor was in fact otherwise verified.
But were we to presume that this certificate was made by the collector under oath, duly administered, it would still fall far short of a cerification such as the statute required. The purpose of the law in requiring an oath from the rollector, was to guard against dishonest returns made by him, and to prevent his being credited *35 with taxes as delinquent, which had in fact been paid to him. The object was to secure to the public a faithful account for moneys collected, and to secure the land-owner against a sale for delinquent taxes, until the fact of such delinquency should be established by the oatlr of the collector. He should, therefore, have declared under oath, that the schedule of delinquent lands which he ^undertook to verify, was a correct list of the lands actually delinquent for the taxes of 1822. Instead of this, he certifies that it is “a correct list of lands returned, 1822, as delinquent, by me, to the county auditor.” To verify this fact would only require a comparison of the list with the collector’s duplicate, which might be made by any other person as well as by the collector. By this statement, he vouches for the care and fidelity of the auditor in compiling the list from his duplicate, when the fact to be established was his own honesty in respect to the returns from which the list was compiled. The fact certified to might be true, and yet the collector might know that none of the lands embraced in the list were in fact delinquent. And had it been verified by affidavit, with such knowledge, there could be no legal perjury in the case, so long as the facts sworn to were true.
We think the evidence offered by the defendant fully rebutted th& prima facie effect of the auditor’s deed, and showed such want of proper verification of the delinquent list as would vitiate the tax sale and render the deed invalid.

Judgment of common pleas affirmed.

Day, White, and Brinkerhoee, JJ., concurred.
Welch, J., did not sit in the case.